## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAHOLA THOMPSON, individually and
On behalf of all others similarly situated

Plaintiff,

V.                                                          Case No: 6:21-cv-1915

STRADA SERVICES INC. d/b/a
Strada Electric and Security, and
JOSEPH STRADA,

Defendants.

_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JAHOLA THOMPSON, individually, and on behalf of all others similarly situated, who consent to their inclusion in this collective action, bring this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendant, STRADA SERVICES INC., d/b/a Strada Electric and Security (a Florida registered fictitious name) and JOSEPH STRADA (hereinafter collectively referred to as "Defendants" or "Strada") for violations of the Fair Labor Standards

Act, 29 U.S.C. §201 *et. seq.* for failure to pay overtime compensation and a premium for all hours worked over forty (40) each week.

## INTRODUCTION

1.      The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a).  To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers.  29 U.S.C. §§ 206(a) and 207(a).  It requires minimum wage and overtime pay for certain non-exempt employees.  29 U.S.C. §213.

2.      Plaintiff, Jahola Thompson ("Thompson" or "Plaintiff") worked for Defendants from approximately June 14, 2021 as an apprentice or trainee, and then in approximately mid July, 2021, Plaintiff was promoted to a Piece Rate paid Electrical Installer and worked as such until on or about October 22, 2021.

3.      Defendants have maintained a scheme to avoid its obligations to pay overtime wages to its non-exempt, Piece rate paid Installers in order to save many millions of dollars in labor costs and maximize profits all to the detriment of its employees.

4.    Defendants permit laborers and non-exempt employees to suffer to work off the clock.

5.    Defendants also discourage and take actions to dissuade, mislead, and prevent full and accurate reporting of all work hours for all piecework workers and labors, such as Plaintiff and "Helpers", a job title which may not be formal but is the name referred to for a certain class of workers and position to describe the laborer who rides along with the Installer/electrician to all work sites and on work orders.

6.    Plaintiff, like his fellow piece rate workers and laborers, and who are members of this putative Class, worked at upwards of 22 locations throughout Florida, ultimately overseen and reporting to the Defendant at its corporate office located in Sanford Florida, and under the complete direction and control of the CEO, Joseph Strada

7.    All installers (aka electricians), and other low voltage technicians were paid on a piece rate based on a work order or job assigned, irrespective of the number of hours worked in any day or any work week.

8.    Defendants willfully violated the FLSA by refusing to pay any premiums for overtime hours they knew of should have known were worked by

piece rate workers and laborers, under the titles of helpers, installers, electricians, or technicians.

9.      Plaintiff, like his fellow piece rate workers (HEREIN AFTER "PRW") in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied any overtime pay for most if not all hours they worked in excess of forty (40) on behalf of Defendants.

10.     Defendants maintained a common unlawful pay practice applicable to all piece rate pay workers, discouraging and misleading Plaintiff and the class of similarly situated from recording or reporting all hours worked.

11.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendants for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiff and others similarly situated overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked.

## FLSA CLASS DEFINITION AND RELIEF SOUGHT

12.     This collective action is to recover from Defendants overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

All persons employed by or performing work for STRADA
SERVICES INC., working or reporting to an office or location in
Florida and Alabama, under a piece rate compensation plan, under the
titles of Helper, installer, technician, Rough and Trim Installer, Rough
and Trim Electrician, or electrician and any other job titles previously
or currently used to describe persons working on a piece rate basis any
time within the three (3) years preceding this lawsuit to the day of
trial.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction over this action

pursuant to 28 U.S.C. §1331, since this action involves a federal question under the

Fair Labor Standards Act, 29 U.S.C. §§201-219, inclusive.

14.    This Court has personal jurisdiction over this action because the

Defendants are engaged in business within the State of Florida.

15.    Venue is proper in the Middle District of Florida pursuant to 28

U.S.C. §1391(b) since the acts complained of herein took place in this District, this

is the home District where Defendants maintain a local office from where Plaintiff

reported to for work.  In addition, Defendants' corporate offices located in Sanford,

Florida are likewise within this district and from where the unlawful policies and

practices complained of herein were created, carried out, and enforced.

16.    Upon information and belief, Defendant Strada Services Inc. has revenues of $500,000.00 or more in the previous three (3) years and employs ten (10) or more employees.

17.    Plaintiff was engaged in interstate commerce, ordering and obtaining products and materials from across state lines, and then installing such products and materials.

18.    At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§206(a) and 207(a).

## THE PARTIES

19.    At all times relevant to this action, Representative Plaintiff Jahola Thompason resided in Florida, and within this district, and at all times material, worked for Defendants as an Installer, also known as a Residential Rough & Trim Installer.

20.    Defendant Joseph Strada is an employer as defined by 29 USC section 203d, as Joseph Strada is directly involved in decisions affecting employee compensation and hours worked by the Plaintiff and all other similarly-situated present and former employees. Defendant Joseph Strada also directed the work and the day-to-day work activities that the Plaintiff and all others similarly situated had

to follow, created the unlawful pay practices alleged here, and enforced those pay practices.

21.     Defendant, Strada Services Inc., is a Florida, for profit corporation with a principal place of business in Sanford, Florida located at 3400 ST. JOHNS PARKWAY, SANFORD, FL 32771. Defendant may be served through its registered agent, owner and CEO, Joseph Strada at the same address.

22.     Defendant Joseph Strada, is the CEO of Strada and upon information and belief is the majority or sole shareholder of Strada Services Inc.  Joseph Strada is a resident of Florida and subject to the personal jurisdiction of this court.

23.     Defendant Joseph Strada also created, instituted and maintained the unlawful pay practices and schemes complained of herein, and was in charge of the day to day management of the company throughout the preceding 3 years to the present.

24.     Defendants own and do business under the Florida registered fictitious business name of Strada Electric and Security, and operate 22 offices throughout Florida and Alabama where similarly situated present and former employees worked from or reported to.

25.     As per Defendants' website, Stradaservices.com, Defendants operate at least 22 offices throughout the State of Florida, in addition to new offices in Houston, Texas and Daphne, Alabama, within the relevant three-year class period.

26.     Defendants, upon information and belief, employed upwards of 700 or more laborers, working under the titles of electricians, installers, technicians, and helpers all of whom were paid on a piece rate pay basis.

## GENERAL FACTUAL ALLEGATIONS

27.     Plaintiff, like the other employees under these job titles, was paid on a piece rate pay plan.  The backbone of the Defendants' pay practices and business practices is paying employees on a piece-rate basis and willfully engaged in a scheme to avoid paying overtime wages by discouraging accurate reporting of overtime hours worked through misleading statements about the FLSA and by a De Facto policy against reporting more than 40 hours on the work orders where Plaintiff and all others similarly situated hand wrote and self-reported their work hours.

28.     Plaintiff was hired by Defendants in June 2021 to work as an apprentice in the Defendants' apprentice program, which is a training program for would be piece rate paid electrical installers aka installers.

29.    Plaintiff is not a licensed, educated or degreed electrician and no such degree, education, diploma, or certification was required for a plaintiff to be hired in the position of installer or electrical installer.

30.    Even though Defendants post jobs for positions as an "electrician", or "Residential Rough & Trim Electricians" or similar names, Strada treats all installers the same in all respects as to compensation and pay policies, and the assignment of work for all locations in a single, unified and standardized position throughout all its 22 plus offices in the state of Florida and in parts of Alabama.

31.     More importantly, Plaintiff is neither by any educational requirement, licensure, or certification, an electrician, and upon information and belief, none of the people filling these positions are required to be licensed, educated, certified or degreed electricians.

32.    The position posted for "Electrician" or "Residential Rough & Trim Electrician" has only 1 requirement for applicants:  the "Ability to use hand and power tools properly."  Other work experience of 2 years is merely "preferred" and thus not required, and neither is any certification, licensure or degree as an electrician.

33.    After approximately five weeks of training of riding along and following with another employee and going to job sites to work under the direction

of a supervisor or manager, and also paid approximately $10.00 per hour, the Plaintiff was then promoted to being an Installer, was paid on a piece rate basis, assigned a company van and assigned jobs to perform installing electrical equipment and materials in primarily residential homes under construction.

34.    Throughout Plaintiff's employment as an Installer, he routinely was required to work in excess of 40 hours per week without being paid or compensated any premium pay for said hours.

35.    In order to complete the work and the jobs assigned to him by Strada, the Plaintiff routinely had to work more than 8 hours in a day and more than 40 hours in a week.

36.    Strada did not have the Plaintiff clock in and out his actual work hours.  Strada provides all installers with work orders that contain a section where the employee/installer can put down the days of the week worked and the hours claimed.

37.    Plaintiff was told by management to just put down 4 hours per job on the work orders, and no more than this, and not to report all the hours he worked.

38.    Plaintiff also was never told that he could or should report the hours from the moment he arrived at the shop in the morning, which he routinely did

prior to starting the jobs in order to pick up equipment and supplies and to obtain each new job assigned.

39.     The work orders which also functioned as timesheets are inaccurate as to Plaintiff's actual work hours, and his manager and the company knows this.

40.     Plaintiff's superior or manager even discussed and disclosed to the Plaintiff his own prior experience as an installer, having to stay until 10pm to finish a job, but those hours were not reported or claimed and were unpaid.

41.     When Plaintiff was promoted to the electrical installer and piece rate paid employee position, he was led to believe by management representatives that he was only entitled to the piece rate pay regardless of whether he worked more than 40 hours in a week.

42.     Plaintiff accepted these representations as correct and assumed Strada was thus in compliance with the FLSA.

43.     However, Strada has for years maintained a GPS tracking system in the company vans provided to the installers, including Plaintiff, such that Defendants are fully and completely aware of the true and accurate work hours of the Plaintiff, and all other Installers; and Strada was aware that the hours reported on the work hours were inaccurate, understated and unreliable.

44.    Furthermore, as per the related and still pending case of **REYES v. STRADA case No. 8:21-cv-00976, MDFL**, and the upwards 20 or more former Strada Installers in that action, Strada has been aware of the following facts:  1) that its Installers routeinly work more than 40 hours each week; 2) that the times and hours reported on the work orders are false, understated, and inaccurate; 3) that its installers are thus working off the clock; and 4) that STRADA has and continues to steal the wages of its Piece Rate Workers (PRW) installers and helpers for many many years.

45.    As Plaintiff Thompson makes clear, that despite the Reyes Complaint being filed and upwards of 20 persons (STRADA Installers and helpers = PRW's) joining and making claims identical to **Reyes** and Plaintiff Thompson here, Defendants have continued with its unlawful pay practices.

46.    Defendants' GPS records, through the Linxup company, all of which are and have been in the Defednants' possession and control and monitored by Defendants on a daily and weekly basis, corroborate and prove that including the times Thompson and all other piece rate workers arrive at the company Warehouse, until completing the last work at the job site for the day required of Plaintiff and all other Installers to routinely work more than 40 hours per week, and worked off the clock.

47.    Upon information and belief, in order to aid its scheme to avoid paying overtime wages, and to deceive and defraud the Plaintiff and all others similarly situated from overtime wages, the Defendants had the installers complete a work order sheet which purports to have work hours on the work order form.

48.    Installers were instructed to put no more than 8 hours per day regardless of the hours spent actually working on each day and no more than 40 hours per week.

49.    These purported worksheets job orders therefore are completely inaccurate and unreliable as to the actual work hours of the Plaintiff and all others similarly situated.

50.    Plaintiff was paid on a strictly piece-rate basis; however, these piece rates were typically non-published and were non-negotiable.  Further, as to each job or work order, there was a rate assigned and designated by Defendants without input or discussion with Plaintiff.

51.    Plaintiff would not be given additional jobs if he did not complete the one he was working on and he was expected to complete the job in a certain amount of time, no matter how many hours it took him to complete it.

52.     Plaintiff was not required to clock in and out for his work hours or meal breaks, nor the times he started or finished jobs or the times he arrived at the warehouse in the mornings.

53.     Plaintiff was provided with work orders, which purports to seek from Plaintiff the work hours for the work performed for each respective job assigned, usually labeled as:  Trim In Work Order, Trim Out work order, or Rough In Work order, or sometimes a service call.

54.     Much of the time, Plaintiff signed the work order forms without inputting any actual work hours, as Plaintiff was never asked or required to clock his actual hours, and his pay was pre-determined by the job signed, not by the hours worked.

55.     Sometimes Plaintiff would, at the direction of his superior and Defendants, put in 8 hours for each calendar day worked, regardless of the actual hours worked, with the explicit instruction to never to put in more than 8 hours for any respective work day.

56.     Defendants, tracking Plaintiff's work activities from the moment he arrived at the warehouse, and to and from all jobs and worksites, was 100% aware of the actual work hours of Plaintiff.

57.     Defendants were fully aware and knew that Plaintiff was working more than 40 hours each week.

58.     Defendants also were thus aware that the work orders contained false information of actual work hours, and that these work orders were clearly unreliable, inaccurate and false representations of the actual work hours of electricians, installers, and helpers.

59.     Plaintiff was told by Defendants he had to work as many hours as necessary to complete the work orders and jobs assigned, and he would not get another job assigned until he finished the one assigned, thus providing an incentive for Plaintiff and all other installers to work as many extra hours as needed, including overtime hours to complete jobs so they can earn more money.

60.      As Plaintiff was paid strictly on a piece rate basis, and told he was not going to be paid any additional pay for hours beyond 40 in any workweek, it was of no consequence to the Plaintiff that the work order, and his paystubs, contained false information as to his actual work hours worked.

61.     When hired, Plaintiff was advised that he was  going to be paid solely on a piece rate pay plan, and that the number of work hours had no relationship to his pay.   The compensation and piece rates offered were non negotiable, and presented on a "take it leave it" basis.

62.    For purposes of the collective action, Plaintiff Thompson by this Complaint, gives his written consent to be a party to this action pursuant to 29 U.S.C. §216(b).

63.    At all times relevant to this action, Defendants were an employer of Plaintiff and all other laborers and piece rate pay workers of this proposed FLSA collective action within the meaning of 29 U.S.C. §203(g).

64.    Defendants maintained a policy and practice for some period during the preceding three (3) years of precluding or misleading Plaintiff and installers from accurately reporting their work hours worked and thus, not paying overtime wages.

65.    During the same time period, and through the present, Defendants maintained a policy of permitting piece rate workers and laborers, including Plaintiff, to suffer to work more than 40 hours in workweeks, without being paid a premium for all hours worked over forty (40) in each and every work week.

66.    Defendants misled and suggested to Plaintiff, and all other piece rate workers against reporting more than 40 hours in any work week but that the failure to work all hours necessary to complete the work orders and jobs would subject them to discipline and termination of employment for failing to keep up with expected deadlines and predetermined work order jobs estimation of work times.

67.    Similarly, Plaintiff and all other piece rate workers would suffer financially if they did not put in as many hours as they could physically handle to get the job done, as they would not be able to work on another work order and be eligible for more compensation until the current work order and job was completed.

68.    Thus, if Plaintiff took 40 hours to do 1 job, his pay was and would be seriously reduced, and thus he would work into the evening hours and on weekends to complete the jobs so he could get more work orders and thus more pay.

69.    Defendants, by and through its managers, knew that the work orders assigned to Plaintiff and all other similarly situated helpers, installers, technicians and piece rate workers regularly required them to work more than 40 hours in the work weeks, and clearly more than the 8 hours per day.  They instructed Plaintiff to cap his hours when filling in the hours on the work order forms for hours worked.

70.    Defendants acquiesced, accepted, permitted and encouraged Plaintiff and all others similarly situated to work additional hours beyond the minimum schedule of 7:00 am until 3:30 pm without being paid any or all premium for all hours worked over 40 in  each respective work week.

71.    Plaintiff routinely worked 6 or more days in a calendar week, thus on a weekend, and likewise routinely was required to work far beyond 3:30 pm,

including as late as 11:00 pm to finish jobs so he could meet company expectations, and as well get another job or work order assigned and earn additional piece rate pay.

72.     Upon information and belief, all Helpers, technicians and installers were paid on similar piece rate plans as Plaintiff.

73.     Plaintiff and members of the Class were willfully denied overtime wages by Defendants as a whole or group under a ***De Facto policy (unwritten policy)*** against recording or claiming hours over forty (40) in any workweek.

74.     Defendants have willfully violated, and continue to violate, §207 of the FLSA by failing to pay Plaintiff and others similarly situated overtime compensation for all hours worked in excess of forty (40) per week.

75.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are complained of herein have been practiced and imposed upon all piece rate workers, unde the job titles of helpers, installers and electricians.

76.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1). Although the FLSA provides for certain exemptions to the mandates of paying

overtime compensation, no exemption applies in the instant matter, and Defendants have treated Plaintiff and all piece rate workers as either exempt employees during this relevant class period to the present, or just has willfully violated the FLSA by not paying premiums for overtime hours worked.

77.     While the overtime rate of pay could be half of the regular rate of pay for piece rate workers, that is to be determined at a later date by the Court.

78.     Moreover, pursuant to the FLSA and DOL regulations, Plaintiff and all piece rate pay workers herein are entitled to be paid a premium for all overtime hours worked, at or above a half time rate of their regular rates of pay, for all hours worked over forty (40) in each and every workweek.

79.     Defendants knew this and continued to steal wages and refuse to pay overtime premiums, despite numerous lawsuits and payment of thousands of dollars in back wages unlawfully withheld to its employees.

80.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

81.     Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with Defendants.

82.     It was against the best interests of piece rate workers to stop working at 3:30 pm, or not put in as many hours as physically possible in order to complete as many jobs as possible.

83.     However, Defendants were aware that installers, technicians, electricians and helpers were performing work outside of the stated 7:00 am to 3:30 pm, Monday-Friday work schedule, and more than the 8 hours per day as stated on the work order, but permitted, endorsed, and encouraged Plaintiff and all piece rate workers to work as many hours as necessary to complete as many jobs as possible, but without being paid premiums for hours over 40 in the workweeks.

84.     Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants' failure to pay overtime compensation was and is a knowing and willful violation of the overtime wage requirements of the FLSA.

85.     The Defendants' practices are clearly unlawful, and Defendants knew it, because it faced numerous lawsuits and claims from other piece rate workers, in the cases of:   *Vasquez v. Strada Services Inc,* **Case no. c:-18-CV-01288;** *Serna v. Strada Services Inc.***, case no- CV-28911-TPB;** *Vargas v. Strada Services Inc.,* **case no. 6:19-1892-EJK,** all filed in the United States District Court, MIDDLE DISTRICT OF FLORIDA.

86.     Despite having to pay many thousands of dollars in stolen overtime wages to these former piece rate employees, and others who joined or filed consents, Defendants refused to change its unlawful pay practices and continued with its scheme to avoid its obligations under the FLSA to pay a premium to these non-exempt, piece rate workers as required by the FLSA.

87.     Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants maintained a scheme to evade and avoid their FLSA wage obligations.

88.     Accordingly, Plaintiff and the putative Class of similarly situated seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiff brings this action individually and on behalf of all others similarly situated who worked as piece rate labor workers, under any title, such as helpers, electricians, installers or technicians, referenced herein as the putative class, as a collective action pursuant to the Fair Labor Standards Act.  29 USC §216(b).

90.     In <u>Young v. Cooper Cameron Corp.</u>, the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

91.     Still, despite the <u>Young</u> court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case.  While the exact number of the members of the putative Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 700 or more individuals in the defined class within the three (3) year relevant class period.

92.     Plaintiff will fairly and adequately protect the interests of the putative Class of similarly situated piece rate workers, and has retained counsel that is experienced and competent in class/collective actions and employment litigation. Plaintiff has no interest that is contrary to, or in conflict with, members of the putative Class.

93.    A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

94.    A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendants will retain the proceeds from its violations of the FLSA.

95.    Furthermore, even if any member of the Class could afford individual litigation against the Defendants, it would be unduly burdensome to the judicial system.  The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

96.    Upon information and belief, all piece rate workers were trained on an ad hoc basis, including Plaintiff, and many were required to ride along with another experienced worker and to see how it's done.

97.    There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  The question of law and fact common to each member of the Class predominates over any questions affecting solely individual members of the action.  Among common questions of law and fact are:

> a.    Whether Defendants employed members of the Class within the meaning of the applicable provisions of the FLSA;

> b.    Whether Plaintiff and members of the Class were expected, permitted, and encouraged to regularly work hours in excess of forty (40) per week off the clock and without being paid a premium for all hours worked;

> c.    Whether Defendants unlawfully required or instructed employees to shave, edit, remove or not submit overtime hours on their own weekly time records;

> d.    Whether Defendants knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by Plaintiff and the Class;

e.      Whether Plaintiff and the Class have sustained damages, and if
so, what is the proper measure of such damages;

f.      Whether Defendants willfully and with reckless disregard,
underpaid Plaintiff and the class of similarly situated, even
when they did pay a premium for overtime hours worked;

g.      Whether Defendants maintained a De Facto, unlawful policy
against paying overtime wages to piece rate workers and
against piece rate workers from claiming or reporting all hours
worked; and

h.      Whether Defendants permitted Plaintiff and all others similarly
situated to suffer to work off the clock.

98.    Plaintiff knows of no difficulty that will be encountered in the
management of this litigation that would preclude its continued maintenance as a
collective action.

## COUNT I
## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

99.    Plaintiff adopts and re-alleges the foregoing paragraphs as if fully
asserted herein.

100.   All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

101.   Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

102.   However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

103.   With respect to an employee subject to the FLSA provisions, the following records must be kept:

a   Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b   Hour and day when workweek begins;

c   Regular hourly pay rate for any week when overtime is worked;

d   Total hours worked each workday and each workweek;

e   Total daily or weekly straight-time earnings;

f   Total overtime pay for the workweek;

g   Deductions from or additions to wages;

h   Total wages paid each pay period; and

i   Date of payment and pay period covered

104.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.   See, 29 U.S.C. §215(a)(5); See also, Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

105.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA.   An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.   See Wirtz v. First State Abstract Ins. Co., 362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

106.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.   See Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

107.   Defendants have failed to accurately record, track and report the Plaintiff's work hours, and for the Class of similarly situated members' time and work hours as required under the FLSA.

108.   Defendants have failed to make, keep and preserve records, with respect to each of its employees records sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR §516.2 and 29 U.S.C. §§211, 216 and related laws.

109.   Defendants' time records should be declared inaccurate, unreliable and excluded from consideration by this Court.

**COUNT II**
**VIOLATION OF § 207 OF THE FLSA**

110.   Paragraphs 1-98 are realleged and incorporated as if fully set forth herein.

111.   At all relevant times, Defendants employed Plaintiff, and/or each member of the Putative Class of similarly situated, and continues to employ members of the Putative Class, within the meaning of the FLSA.

112.   Upon information and belief, all electricians, helpers, installers and technicians were paid under a common and similar compensation plan and scheme,

comprised of a piece rate pay per job or work order, and irrespective of the number of hours worked.

113.   Defendants assigned a specific rate for each job or work order, rather than providing the Plaintiff with any set price sheet or pay codes, such that Plaintiff and members of the putative class would not know their own pay until each work order was given to them.

114.   Defendants maintained a De Facto policy and practice of refusing to pay overtime compensation to piece rate workers for the hours worked in excess of forty (40) hours per week.

115.   Defendants mislead and dissuade piece rate workers from reporting or claiming overtime hours (hours over forty (40)) in a workweek out of fear of scrutiny, discipline and management displeasure, meanwhile, suggesting, encouraging and even warning piece rate workers to meet and exceed quotas, production goals, and times assigned to jobs.

116.   Defendants' management is well aware of employees working more than 8 hours in a day, more than 40 hours in a week, and well beyond the minimum work schedule of Monday to Friday, 7:00 am until 3:30 pm, and does not discipline these employees for doing so.

117.   Defendants do not instruct, order or command employees to leave at the end of their shift time, nor do they prohibit employees from performing work activities they know piece rate workers are engaging in on behalf of Defendants in the evenings and on weekends.

118.   As a result of Defendants' unlawful pay practices complained of herein, throughout the three (3) year class period to the present, Defendants have willfully stolen many millions of dollars or more in wages from piece rate workers.

119.   Defendants knowingly and willfully failed to pay Plaintiff and all other members of the Class, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendants above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

120.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

121.   Defendants are well aware that in order to meet goals, job completion times and to complete and perform their job duties to the expectations of Defendants, piece rate workers must work more than forty (40) hours in a workweek routinely, and especially since they are not able to earn more pay unless and until they finish a job they start.

122.   Moreover, by the inherent nature of piece rate work, Defendants understand that the more hours piece rate workers put in and work, the more likely they will produce more in revenues for Defendants.

123.   Defendants engaged in a scheme to avoid paying overtime wages.

124.   Defendants knew that the work assigned to piece rate workers employed under the various job titles of installers, helpers, electricians and technicians would result in employees working more than forty (40) hours routinely in order to meet goals, job and work order requirements and other performance metrics.

125.   Defendants willfully failed and refused to pay Plaintiff and all other similarly situated piece rate workers a premium for all overtime hours worked.

126.   Defendants cannot and do not have a good faith basis under the FLSA for its willful actions and conduct of refusing and failing to pay Plaintiff and all similarly situated piece rate workers lawful rates for all overtime hours worked over 40 hours in each and every workweek, especially since the law is clear and Defendants had 3 or more similar lawsuits and never corrected its unlawful pay practices or went and paid all piece rate workers for the 3 years of overtime wages they stole from them.

127.   Plaintiff and the class of similarly situated thus are entitled to, and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

128.   Due to Defendants' willful FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendants the unpaid and underpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

129.   Plaintiff and the class of similarly situated have suffered financial harm and loss of monies owed to them as a direct and proximate result of Defendants' unlawful pay practices complained of herein.

**WHEREFORE** Plaintiff, JAHOLA THOMPSON, individually and behalf of all others similarly situated prays for:

a.      An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated

individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of STRADA SERVICES INC. any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b.    An order awarding attorneys' fees and costs pursuant to §216 of the FLSA;

c.    That the Court find Defendants in violation of the overtime compensation provision of the FLSA and that the Court find that Defendants' violations of the FLSA were and are willful;

d.    That the Court award Plaintiff Thompson and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek at correct and lawful rate of pay during the past three (3) years, AND an equal sum in liquidated damages.  In addition, interest on said award pursuant to §216 of the FLSA;

e. That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel in the FLSA collective action, and appoint Jahola Thompson as class representative for all those similarly situated with the authority to negotiate on behalf all opt in plaintiffs; and

f. That the Court award any other legal and equitable relief as this Court may deem appropriate, fair and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Filed November 15, 2021.

Respectfully submitted,

*/s/Mitchell Feldman, Esq.*
**Mitchell L. Feldman, Esquire**
Florida Bar No.:  0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366 - Fax: 813-639-9376
Email:Mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff and the class*
*of similarly situated*